**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dean Franklyn Soares, | No. CV-19-01311-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

On February 22, 2019, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Petitioner thereafter filed an amended petition (Doc. 4) and an "addendum" that purports to assert additional grounds for relief (Doc. 11). On April 27, 2020, Magistrate Judge Bibles issued an amended Report and Recommendation ("R&R") concluding the petition should be denied. (Doc. 18.) Afterward, Petitioner filed objections to the R&R (Doc. 27) and Respondents filed a response (Doc. 29). For the following reasons, the Court will overrule Petitioner's objections, adopt the R&R, and terminate this action.

I.     Background

*The Underlying Crime*. Petitioner, who was "forty-seven years old at the time of his arrest . . . and possessed multiple advanced educational degrees," "paid to subscribe to particular websites that sold child pornography." *States v. Soares*, 2010 WL 532370, *7 (Ariz. Ct. App. 2010). "The images consisted of . . . minors posing in elaborate settings and costumes, such as those of a duchess or a pirate." *Id.* at *1.

In June 2006, Petitioner "voluntarily invited two plain clothes police officers into his home after they identified themselves as police, displayed their badges, and informed him they were looking for child pornography on computers." *Id.* at *3. "After they were inside his house, they asked [Petitioner] for written consent to inspect his computer for child pornography. At that time, [Petitioner] voluntarily signed a consent to search form that explicitly authorized police to conduct only a limited search of his laptop computer for child pornography." *Id.* at *4.

When Petitioner went to his bedroom to retrieve his laptop, he deleted some of the images stored on it. *Id.* at *1. Nevertheless, during the officers' resulting search, they discovered at least one image that appeared to be child pornography. *Id*. "Before retrieving any additional images, the officers took [Petitioner] into custody and obtained a *Miranda* waiver." *Id.* During an ensuing interview, which was videotaped, Petitioner admitted "that similar images of children, some as young as ten years old, would be found on his laptop" but argued, among other things, "that he considered the images 'art.'" *Id.*

Following this interview, a detective used specialized software to retrieve additional images from Petitioner's computer. *Id.* All told, the police extracted at least 10 images (including three videos) from the computer. *Id.* "[A]ll of the images were copied and saved between August and November 2005, and last accessed between April and June 2006, the same day the police went to [Petitioner's] house." *Id.* "[A]ll of the girls in the images appeared to be under thirteen years of age." *Id.*

*The Charges, Trial, And Sentencing*. In July 2006, Petitioner was indicted on 10 counts of sexual exploitation of a minor. (Doc. 18 at 2.)

Petitioner was represented by retained counsel during his pretrial and trial proceedings. (*Id.*) Before trial, Petitioner moved to suppress the evidence found on his computer, arguing that the officers who obtained his consent to enter his home had violated the Arizona Constitution by failing to affirmatively advise him of his right to refuse. *Soares*, 2010 WL 532370 at *3-5. After holding an evidentiary hearing, the trial court denied the suppression motion. *Id.*

Before trial, Petitioner also secured a court order "precluding evidence of the federal investigation that precipitated" the officers' visit to his home. *Id.* at *5-6. During trial, however, one of the officers stated (in response to the question "What is a knock-and-talk?") that "[b]asically, we knock at a person's house, and we ask them if we can come in and talk to them about a crime that we think has occurred." *Id.* Petitioner's counsel moved for a mistrial based on this answer, arguing that it violated the pretrial order barring any reference to the underlying investigation, but the trial court denied the motion and instructed the jury to disregard the officer's statement. *Id.*

The jury ultimately convicted Petitioner of two counts, hung on a third count, and acquitted on the remaining seven counts. (Doc. 18 at 3.)

On May 1, 2008, the trial court sentenced Petitioner to a sentence of 10 years on each of the two counts of conviction, to be served consecutively. (*Id.*)

*The Direct Appeal.* In his direct appeal, Petitioner was represented by new retained counsel. (*Id.*) He agued (1) there was insufficient evidence to support one of the counts of conviction, (2) the trial court erred in denying his motion to suppress, (3) the trial court erred in denying his motion for mistrial, (4) the trial court erred in precluding the admission of evidence reflecting that the websites he visited contained "legal disclaimers," and (5) his sentence was unconstitutional. (*Id.*)

On February 16, 2010, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (*Id.*)

On September 21, 2010, the Arizona Supreme Court summarily denied Petitioner's petition for review. (*Id.*)

*Initial PCR Proceedings.* On October 21, 2010, Petitioner (through retained counsel) filed a notice of post-conviction relief ("PCR"). (*Id.*) Petitioner's retained counsel subsequently withdrew and was replaced by appointed counsel. (*Id.*) Afterward, appointed counsel filed a PCR petition asserting that (1) the statute of conviction, A.R.S. § 13-3553, was unconstitutional, and (2) Petitioner received ineffective assistance because his trial counsel failed to timely obtain and produce the "legal disclaimers" from the

1 website. (*Id.* at 3-4.)

2 On February 3, 2012, the trial court summarily denied PCR relief. (*Id.* at 4.)

3 Petitioner thereafter filed a *pro se* petition for review with the Arizona Court of Appeals. (*Id.*) On August 12, 2013, that court summarily denied relief. (*Id.*)

5 Petitioner did not seek review in the Arizona Supreme Court. (*Id.*) Thus, the Arizona Court of Appeals issued its mandate on October 15, 2013. (*Id.*) However, that court subsequently vacated the mandate and reinstated the appeal for the sole purpose of correcting a typographical error. (*Id.*) After the typographical error was corrected, Petitioner petitioned for review in the Arizona Supreme Court. (*Id.*) On June 12, 2014, that court denied review. (*Id.*)

11 *Successive PCR Proceedings*. On January 9, 2014, Petitioner filed a *pro se* "writ of habeas corpus ad subjiciendum," which attempted to challenge his sentence. (*Id.*) The trial court construed the writ as a Rule 32 action and dismissed it as both untimely and successive, noting that the claims were also precluded by Petitioner's failure to raise them in his first PCR action. (*Id.*)

16 On July 28, 2014, Petitioner filed another notice of Rule 32 relief. (*Id.*) On August 21, 2014, the trial court dismissed the action as untimely and successive. (*Id.*)

18 On January 6, 2017, Petitioner filed a fourth petition for state habeas relief. (*Id.*) In it, Petitioner asserted he had "new" and "first-hand" witnesses, *i.e.,* two roommates (Dr. Endres and "Mr. Craig"), who had "vital, reliable and exculpatory case information" regarding the search of his residence. (*Id.*) Attached to the petition was a statement from Dr. Endres that, after the police executed the search warrant, "the computer that my father and I owned" had been removed. (*Id.* at 4-5.) The trial court, after construing the petition as asserting claims of actual innocence and prosecutorial misconduct, concluded that the petition was untimely (because the "newly" discovered facts were known to Petitioner at the time of trial and not exculpatory) and alternatively that the claims for relief were precluded. (*Id.* at 5.)

28 On November 28, 2017, the Arizona Court of Appeals denied relief, "noting the

instant petition was [Petitioner's] fourth Rule 32 petition and concluding the trial court did not abuse its discretion in denying relief." (*Id.*)

Petitioner did not seek review in the Arizona Supreme Court. (*Id.*) Accordingly, the Arizona Court of Appeals issued its mandate on February 29, 2018. (*Id.*)

*The Habeas Claims*. Between his petition, amended petition, and addendum, Petitioner asserts a *Brady* claim, various unlawful search claims, various due process claims, a sufficiency-of-the-evidence challenge, a malicious prosecution claim, and a Confrontation Clause claim. (*Id.* at 5-7.)

*The R&R*. The R&R concludes that Petitioner's claims are barred by AEDPA's one-year statute of limitations. (*Id.* at 7-11.) Specifically, the R&R explains that Petitioner's state-court conviction became final on December 20, 2010, which is 90 days after the Arizona Supreme Court denied relief in his direct appeal, and that Petitioner is only entitled to statutory tolling through June 12, 2014, which is when the Arizona Supreme Court denied relief in Petitioner's first PCR action. (*Id.* at 7-8.) Thus, the R&R concludes that Petitioner's initiation of this action in February 2019 came far too late. (*Id.*)

The R&R clarifies that Petitioner is not entitled to statutory tolling during his second and third PCR actions because those actions "were deemed successive and untimely by the state court." (*Id.* at 8.) Additionally, the R&R notes that Petitioner "had no state actions for post-conviction relief of any kind pending for more than two years, until January 6, 2017, when he filed a fourth Rule 32 petition," and thus "[t]he fourth Rule 32 petition. . . could not and did not restart the limitations period on [Petitioner's] federal habeas petition." (*Id.*)

Finally, the R&R concludes that Petitioner is not entitled to equitable tolling based on "new" evidence (*i.e.,* the declaration from his former roommate, Dr. Endres) because (1) "none of Dr. Endres' statements belie the legitimacy of the search warrant resulting in the seizure of evidence introduced at [Petitioner's] trial," (2) "the statement does not establish [Petitioner's] innocence of the crimes of conviction," (3) Petitioner "does not explain how this 'evidence' could not have been discovered through the exercise of due

diligence prior to the expiration of statute of limitations," as he "presumably knew or could have known that his roommate was at the apartment on the day of the search, and that the police presumably seized Dr. Endres' computer as well as [his] computer," (4) Petitioner is also "unable to establish due diligence because he knew of this 'evidence' at the time he filed his fourth Rule 32 action and nonetheless let eleven months pass after the termination of that action before filing his federal habeas petition," and (5) "to the extent [Petitioner] asserts this 'new' evidence, *i.e.,* Dr. Endres' statement, warrants consideration of the merits of his Fourth Amendment claims by this Court, a Fourth Amendment claim is not cognizable in a federal habeas action." (*Id.* at 8-10.)

II. <u>Legal Standard</u>

A party may file written objections to an R&R within fourteen days of being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules"). Those objections must be "specific." *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").

District courts are not required to review any portion of an R&R to which no specific objection has been made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). Thus, district judges need not review an objection to an R&R that is general and non-specific. *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").[1]

---

[1] *See generally* S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 72, at 422 (2018) ("A party who wishes to object to a magistrate judge's

- 6 -

III.   Analysis

Petitioner's objections to the R&R (Doc. 27) are difficult to decipher. Petitioner's arguments appear to be that (1) the Court should overlook the untimeliness of his habeas petition pursuant to the "actual innocence" gateway (*id.* at 1-3); (2) he is entitled to equitable tolling because "the level of diligence [he] has forever exhibited exceeds that expected of someone of ordinary prudence" and because he didn't learn until June 1, 2015 that the Arizona Court of Appeals had denied relief (*id.* at 3-6); (3) he is entitled to equitable tolling because he diligently sought legal representation from various attorneys (*id.* at 6-7); (4) he is entitled to equitable tolling because he acted diligently in searching for Dr. Endres (*id.* at 7-9); (5) he is entitled to equitable tolling because certain documents were mailed to his parents and they didn't timely forward the documents to him (*id.* at 9-10); (6) the magistrate judge made "an erroneous assessment" when rejecting his actual innocence claim (*id.* at 10-15); and (7) he is entitled to a *Martinez* hearing (*id.* at 15-17).

Petitioner's objections are unavailing. As an initial matter, the Endres declaration does not come close to establishing actual innocence. Charitably construed, the declaration might, at most, support some of Petitioner's arguments related to the legality of the search that led to the discovery of the child pornography on his computer. But "[c]hallenging the search and seizure of the [underlying] evidence, even if successful, would not show actual innocence—that [the habeas petitioner] did not commit the [underlying] offense." *Warren v. United States*, 707 Fed. App'x 509, 512 (10th Cir. 2017).

Petitioner's various arguments concerning equitable tolling also lack merit. The Court has carefully reviewed the R&R's analysis of this issue and adopts it in full. Many of Petitioner's objections relate to his *pro se* status, ignorance of the law, and lack of representation, but as Respondents correctly point out (Doc. 29 at 5-6), such considerations do not trigger equitable tolling.

…

---

ruling must make specific and direct objections. General objections that do not direct the district court to the issues in controversy are not sufficient. . . . [T]he objecting party must specifically identify each issue for which he seeks district court review . . . .").

Accordingly, **IT IS ORDERED** that:

(1) Petitioner's objections to the amended R&R (Doc. 27) are **overruled**.

(2) The amended R&R's recommended disposition (Doc. 18) is **accepted**.

(3) The habeas petition (Doc. 1), amended habeas petition (Doc. 4), and addendum thereto (Doc. 11) are **denied**.

(4) A Certificate of Appealability and leave to proceed *in forma pauperis* on appeal are **denied** because Petitioner has not made a substantial showing of the denial of a constitutional right and because dismissal is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable.

(5) The Clerk shall enter judgment accordingly and terminate this action.

Dated this 9th day of November, 2020.

Dominic W. Lanza
United States District Judge